IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FAHEEM ROCHESTER, | ) |
| | ) NO. 3:23-CV-284-RAL |
| Plaintiff | ) |
| | ) RICHARD A. LANZILLO |
| vs. | ) Chief United States Magistrate Judge |
| | ) |
| KLINEFELTER, WARDEN DEPUTY | ) MEMORANDUM OPINION ON |
| IVICIC, DEPUTY CLOSE, MAJOR | ) DEFENDANTS' MOTION TO DISMISS |
| BARROWS, LLPM PYO, LT | ) |
| PATTERSON, C/O DAVIS | ) ECF NO. 16 |
| | ) |
| Defendants | ) |

I. Background

Plaintiff Faheem Rochester, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), brings this action against seven employees of the DOC at its State Correctional Institution at Houtzdale ("SCI-Houtzdale"). The sole claim asserted in Rochester's pro se Complaint is that the Defendants confined him under conditions that violated his rights under the Eighth Amendment to the Constitution. He bases this claim on allegations that the Defendants refused to release him to the prison's general population after his term in disciplinary custody had ended. ECF No. 7, ¶ 9. He seeks redress for this violation pursuant to 42 U.S.C. §1983 and demands compensatory damages and declaratory and injunctive relief against the Defendants in both their individual and official capacities.

The Defendants have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). They argue that (1) Rochester's claim for monetary damages against them in their official capacities must be dismissed based on Eleventh Amendment immunity; and (2) the Complaint fails to allege facts to support a finding that any Defendant subjected Rochester to cruel and unusual conditions of confinement. Although Rochester does not explicitly assert an Eighth

1

Amendment claim based on Defendant Lt. Patterson and Defendant C.O. Davis's alleged failure to protect him from his own acts of self-harm, the facts alleged in the Complaint may be interpreted as raising such a claim. Additionally, Rochester's allegations may be construed as raising a procedural due process claim. Construing the Complaint liberally, the Court will treat his Complaint as asserting both additional claims. The Court will also address the legal sufficiency of each additional claim.

For the reasons discussed below, the Court will grant the Defendants' motion to dismiss as it relates to Rochester's claim for monetary damages against the Defendants in their official capacities, his Eighth Amendment conditions-of-confinement claim based on the refusal to transfer him to general population, and his due process claim. Rochester's claim for monetary damages against the Defendants in their official capacities will be dismissed with prejudice, but Rochester will be permitted an opportunity to file an amended complaint as to his conditions-of-confinement claim and his due process claim. The Court will deny Defendants' motion to dismiss as to Rochester's claim against Lt. Patterson and C.O. Davis based on their alleged failure to protect him from his acts of self-harm.

II.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See, Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir.2003). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present

2

factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

Finally, because Rochester is proceeding pro se, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on

its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

    III.    Discussion

           A. Eleventh Amendment immunity bars Rochester's claims for monetary damages against the Defendants in their official capacities.

All claims for monetary damages against the Defendants in their respective official capacities must be dismissed because each Defendant is an official, officer, or employee of the DOC, a department of the Commonwealth of Pennsylvania, and, as such, each enjoys Eleventh Amendment immunity from such claims. As this Court recently explained:

> The Eleventh Amendment proscribes actions in the federal courts to recover damages against states, their agencies, and state officials acting within their official capacities. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651, (1974) (state employees acting in their official capacity). A state, state agency, or state official is subject to suit for damages in federal court only if: (1) the state has waived its Eleventh Amendment immunity, *see Kentucky v. Graham*, 473 U.S. 159 (1985), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits. *See Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001).

*Mitchell v. Jones*, 2022 WL 2657365, at *3 (W.D. Pa. Mar. 9, 2022), *report and recommendation adopted*, 2022 WL 2063256 (W.D. Pa. June 8, 2022). *See also, Beale v. Wetzel*, 2015 WL 2449622 (W.D.Pa. 2015) (dismissing official capacity claims against DOC officials). Pennsylvania has not waived its immunity under the Eleventh Amendment. *See* 42 Pa. Const. Stat § 8521(b) ("Nothing contained in this subchapter [on actions against Commonwealth parties in civil actions and proceedings] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States").

4

Congress also has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. See, *Durkin v. Pennsylvania Dep't of Lab. & Indus.*, 2023 WL 5984339, at *3 (W.D. Pa. Sept. 14, 2023). Consequently, Rochester cannot maintain any claim for monetary damages against the Defendants in their official capacities.

"The Eleventh Amendment. [however,] ... does not bar claims against state officials for declaratory or prospective injunctive relief based upon federal law." *Mertz ex rel. Mertz v. Houstoun*, 155 F. Supp. 2d 415, 425 (E.D. Pa. 2001). *See also, Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (holding that a suit seeking to enjoin a state official's unconstitutional action is not one against the State and therefore not barred by Eleventh Amendment immunity). Therefore, the Eleventh Amendment does not preclude Rochester's claims for declaratory or injunctive relief against the Defendants in their official capacities.

> B. The Complaint fails to allege facts to support an Eighth Amendment conditions-of-confinement claim based on Defendants' refusal to transfer Rochester from disciplinary confinement to the general prison population.

Rochester alleges that he was not returned to the prison's general population on October 26, 2023, when his disciplinary custody term ended. He attributes the decision to maintain him in disciplinary custody to the Defendants, who Rochester identifies as members of the Program Review Committee ("PRC") team. ECF No. 7, ¶ 9. He further alleges that the refusal to return him to general population caused him to suffer severe emotional distress and that this, in turn, prompted him to "cut [his] wrist and swallowed metal and glass to try and kill [him]self" on "10-26-23 to 11-1-23." *Id.*, ¶ 11. Rochester alleges that Defendant Lt. Patterson and Defendant C.O. Davis observed his attempts to harm himself and that Lt. Patterson responded by telling him to "go ahead and kill [your]self." *Id.* Rochester asserts that he was never taken to medical despite the presence of "blood all over [his] floor." *Id.*

Rochester's Complaint alleges that the Defendants violated his Eighth Amendment rights by refusing to release him to general population even though his disciplinary custody had allegedly ended. *Id.*, ¶ 9. The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

To state an Eighth Amendment conditions-of-confinement claim, a plaintiff must allege facts, which if proven, support two findings: (1) the deprivation to which the plaintiff was subjected was "objectively, 'sufficiently serious,'" and "(2) the 'prison official [had] a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). The first element of the test can be satisfied in two different ways. First, it is met when an inmate is deprived of "the minimal civilized measure of life's necessities." *See id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). Alternatively, it is satisfied when an inmate "is incarcerated under conditions that pose a substantial risk of serious harm." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotation marks omitted)). Only "extreme deprivations" support a sufficiently serious deprivation. *Fantone v. Herbik*, 528 Fed. Appx. 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). The inmate need not show actual injury, however, to satisfy the first element of the claim. *Id.* "The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights." *Id.* (citing *Wilson*, 501 U.S. at 302–03).

"[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 39-40 (2002). Furthermore, "prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment." *Myers v. Folerezell*, 2023 WL 8478013, at *4 (M.D. Pa. Dec. 7, 2023) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)). *See also*, *Podhorn v. Grondolsky*, 350 Fed. Appx. 618, 620 (3d Cir. 2009) (reiterating that "prisoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program").

Accordingly, the Defendants' retention of Rochester in disciplinary custody (presumably in the restricted housing unit or "RHU") provides no basis for an Eighth Amendment violation absent factual allegations to demonstrate that the Defendants denied him the minimal civilized measure of life's necessities or incarcerated him under conditions posing a substantial risk of serious harm. His allegations support no such finding. In fact, the Complaint alleges no facts regarding the actual conditions Rochester experienced while housed in the RHU. The Complaint therefore fails to state an Eighth Amendment claim against any Defendant based on his failure to transfer Rochester from the RHU to general population.

      C. The Complaint alleges facts sufficient to state a failure-to-protect claim against Lt. Patterson and C.O. Davis.

Although the Eighth Amendment claim based on the Defendants' failure to transfer Rochester from the RHU to general population is the only claim expressly asserted in the Complaint, the facts alleged arguably raise a peripherally related Eighth Amendment claim based on Lt. Patterson and C.O. Davis's failure to intervene in and protect him from his acts of self-harm.

7

To state an Eighth Amendment claim based on deliberate indifference to the risk of suicide or self-harm, Rochester must allege facts supporting plausible inferences "(1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017) (internal quotations omitted). Here, Rochester's allegations against Patterson and Davis minimally support these elements. He alleges that Davis was assigned to observe him in his cell and that both Patterson and Davis watched him cut his wrists and ingest metal and glass over a multi-day period and later took no action to send him to the medical department despite blood all over his cell floor. ECF No. 7 at ¶ 11. He further alleges that Patterson encouraged him to "go ahead and kill" himself. *Id.* These allegations support plausible inferences that Rochester had a particular (expressed) vulnerability to self-harm and that Patterson and Davis were deliberately indifferent to that vulnerability. The Complaint therefore states an Eighth Amendment failure-to-protect claim against Patterson and Davis.[1] This claim is viable only against Defendants Patterson and Davis. The Complaint alleges no facts to support the claim against any other Defendant.

---

[1] Certain exhibits attached to the Complaint potentially contradict some of the allegations of the Complaint. Exhibit D (ECF No. 7-4) is a Psychiatric Observation Monitoring Form that apparently recorded observation notes concerning Rochester on October 26, 2023. The notes relate that Rochester had a wound on one of his arms and that after he covered and then uncovered the window of his cell, he was observed to have wounds on both arms. The Court is also mindful that the facts alleged in the Complaint also support a plausible inference that the acts of self-harm alleged here were calculated to prompt prison officials to transfer Rochester from the RHU to general population. Whether these alleged acts of self-harm were a manifestation of Rochester's emotional or mental distress or calculated to achieve secondary gain cannot be determined from the face of the Complaint.

D. The Complaint fails to allege facts to support a procedural due process claim.

Rochester alleges that Defendants continued him in disciplinary custody beyond the date he was entitled to return to the prison general population. Although far from clear, Rochester may be attempting to assert a procedural due process claim. To the extent he intended to assert this claim, he failed.

To state a procedural due process claim, the inmate-plaintiff must allege facts to support that he has a liberty interest that is protected by the Fourteenth Amendment. *Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) (citations omitted); *see also, Montanez v. Sec'y Dep't of Corr.*, 773 F.3d 472, 482 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)). If the plaintiff demonstrates a protected interest, the Court must then determine what process is necessary to protect it. *See Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted).

Prisoners do not enjoy the same liberty interests as others do. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995). Incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 438 (3d Cir. 2020) (emphasis omitted) (quoting *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017)). In determining whether Rochester's custody in the RHU imposed an atypical and significant hardship, the Court must consider "the duration of the challenged conditions" and the severity of the conditions "in relation to the ordinary incidents of prison life." *Williams*, 848 F.3d at 560 (citing

9

*Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). There is no bright line defining where the duration of segregation becomes atypical. *Williams*, 848 F.3d at 561-62. An inmate sentenced to thirty days in disciplinary confinement does not endure such hardship. *See, Sandin*, 515 U.S. at 486. On the other hand, eight years is atypical. *Shoats*, 213 F.3d at 144. When the duration of confinement becomes atypical will vary depending on the severity of the conditions of confinement. *Id*.

In this case, Rochester has alleged no facts regarding the duration or conditions of his confinement in the RHU. Nor has he alleged any facts regarding what procedures, if any, were available to him to contest his retention in the RHU. Absent such allegations, his Complaint fails to state a procedural dues process claim.

IV. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted as it relates to Rochester's claim for monetary damages against the Defendants in their official capacities, his Eighth Amendment claim based on the refusal to transfer him to general population, and his due process claim. Rochester's claim for monetary damages against the Defendants in their official capacities will be dismissed with prejudice, but Rochester will be permitted an opportunity to file an amended complaint as to his conditions-of-confinement claim and his due process claim within twenty (20) days of the entry of the Court's Order. The Defendants' motion to dismiss will be denied as to Rochester's claim against Lt. Patterson and C.O. Davis based on their alleged failure to protect him from his acts of self-harm.

A separate Order will follow.

BY THE COURT:

Dated: December 17, 2024

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE